# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **DARREN T. BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:13-01176** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on November 17, 2009, alleging that he

had been disabled since March 8, 2008, due to a fractured left femur, type II diabetes mellitus, an

eating disorder, and being a "slow learner." Docket No. 12, Attachment ("TR"), TR 121, 128,

151. Plaintiff's applications were denied both initially (TR 60, 61) and upon reconsideration (TR

62, 63). Plaintiff subsequently requested (TR 79) and received (TR 88) a hearing. Plaintiff's

hearing was conducted on January 26, 2012, by Administrative Law Judge ("ALJ") Shannon H.

Smith. TR 28. Plaintiff, vocational expert ("VE"), Melissa Neel, and witness, Marie Bennett,

appeared and testified. *Id.*

On April 6, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations. TR 9-22.

Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant has not engaged in substantial gainful activity since March 8, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: left hip fracture and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; occasionally push/pull with his left lower

extremity; occasionally climb ladders/ropes/scaffolds; frequently climb ramps/stairs, balance, crouch, and crawl; perform one-, two-, and three-step tasks; can work in a non-production-pace place of employment; adapt to occasional changes in the workplace or job duties; and occasionally interact with the public, supervisors, or co-workers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 5, 1966 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 8, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 14-22.

Plaintiff timely filed a request for review of the hearing decision. TR 7. On August 21, 2013, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was

thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) *(citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to: (1) properly assess his credibility; (2) properly consider and incorporate the opinions of Dr. Robert Gatson set forth in his Medical Source Statement Physical and Mental assessments; (3) properly consider and incorporate the opinions of Ms. Alice Garland set forth in her Medical Source Statement Mental assessment; (4) include a function-by-function assessment in her RFC determination for Plaintiff; and (5) properly consider all of his impairments and adequately explaining why these impairments were nonsevere. Docket No. 15 at 1-2. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1.  Credibility of Plaintiff's Statements**

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not adequately evaluate his complaints of pain. Docket No. 15 at 11. Plaintiff argues that the ALJ made a single conclusory statement that she used the requisite criteria of SSR 96-7p in reaching her decision, but failed to specifically outline the weight she gave to Plaintiff's statements, and the reasons therefor. *Id.* Plaintiff also argues that, in finding that his statements were not credible, the ALJ "mischaracterized" and placed "excessive emphasis" on his daily activities and erroneously "used these to imply that the Plaintiff is more active than alleged." *Id.* at 12. Plaintiff contends this was erroneous because the fact that he can perform simple functions does not necessarily indicate that he can engage in substantial gainful activity. *Id.*

Defendant responds that the ALJ properly analyzed Plaintiff's subjective complaints and specifically stated that she discounted his credibility "due to a variety of inconsistencies." Docket No. 16 at 8. Defendant argues that the ALJ discussed Plaintiff's testimony and the

evidence that demonstrated those inconsistencies. *Id.* at 9-10. Defendant contends that because the ALJ specifically discussed the inconsistencies between Plaintiff's testimony, reported daily activities, and evidence, the ALJ properly evaluated Plaintiff's credibility. *Id.* at 10. Defendant additionally asserts that the ALJ's decision was supported by substantial evidence. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints, including pain and other disabling symptoms, are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible to the extent that they differed from the determined residual functional capacity assessment. TR 19. In making this finding, the ALJ discussed Plaintiff's subjective complaints as follows:

> The claimant alleges disability due to left hip fracture and borderline intellectual functioning since the alleged onset date of 03/08/2008. During the hearing, the claimant testified to the symptoms of pain and weakness.

TR 17.

The ALJ also discussed at length Plaintiff's medical records as follows:

> As for the objective physical evidence, Summit Medical Center records indicate that the claimant presented to the emergency department on 03/08/2008 with hip pain after the claimant slipped and fell on some ice. Ex. 4F, p. 3. On 03/12/2008, the claimant underwent a consultation with Nurse Practitioner ("NP") Caprice Fussel; NP Fussel's consultation confirmed the presence of a left

10

hip fracture on which the claimant was unable to bear weight, and the claimant was admitted for surgery. Ex. 5F, pp. 1-3. The claimant was admitted to Summit Medical Center on 03/12/2008, at which time he underwent left femoral neck percutaneous pinning with three 6.5-mm cannulated screws, as well as an intraoperative fluoroscopy. Ex. 6F, p. 1. There were no complications, and the claimant tolerated the procedures well. *Id.* On 03/14/2008, the claimant was discharged in stable condition. Ex. 6F, p. 2.

During the claimant's first post-operative follow-up appointment, Dr. Scott Dube, who performed the claimant's surgery, noted the claimant's complaints of post-surgical pain. Ex. 8E, p. 6. Dr. Dube further indicated that X-rays confirmed that the claimant's screws were still in place, and the claimant's staples were still in place, his incision was clean and dry, and he would return for another appointment in two weeks. *Id.* As of 04/02/2008, the claimant reported no more pain, and Dr. Dube allowed the claimant to begin bearing 50% weight on his left leg. Ex. 8F, p. 5. The claimant continued to report no pain at subsequent follow-up appointments. *See* Ex. 8F, pp. 1-5. On 06/10/2009, approximately 15 months after the claimant's surgery, Dr. Dube noted that the claimant was doing great, having no problems, but that his hip was stiff in the winter. Ex. 8F, p. 1. Dr. Dube noted that, according to X-ray imaging, the claimant's hip had healed, and his hardware looked good. *Id.* The claimant saw Dr. Dube for another follow-up approximately two years later, on 06/16/2011. On that date, Dr. Dube noted, "[The claimant] is doing great with no pain. He walks without any problem. He has no complaints." Ex. 14F, p. 1. Dr. Dube's review of the claimant's systems yielded completely normal results. Ex. 14F, pp. 1-2. In addition, Dr. Dube noted no hip tenderness or groin pain, that the claimant's left hip was neurovascularly intact, and that the claimant's incision had healed well. Ex. 14F, p. 2. X-rays indicated that the claimant's fracture was still healed and that his surgical hardware was in a good position. *Id.* Dr. Dube concluded that the claimant was "doing great." *Id.*

On 01/24/2010, Dr. Bruce Davis performed a consultative examination of the claimant. Dr. Davis's exam yielded predominantly normal results. Ex. 10F, p. 1. However, Dr. Davis noted that the claimant complained of hip pain and demonstrated slow hip flexion. *Id.* Dr. Davis also noted, in regard to the claimant's knee, that the claimant was unable to complete a squatting maneuver, and he was slow to arise. *Id.* Finally, Dr.

Davis noted that the claimant exhibited normal gait and gait maneuvers (heel and toe) with unsteady tandem maneuvers. *Id.*

Additional treatment notes from Summit Primary Care, as prepared by the claimant's treating physician, Dr. Robert Gaston, indicate that the claimant presented on 08/23/2011 to "discuss disability." Ex. 15F, p. 1. On that date, Dr. Gaston performed a physical examination that revealed generally normal results overall, including "normal full range of motion of all joints." Ex. 15F, p. 4.

During a consultative examination on 02/22/2012, the claimant reported that his hip was "not painful right now." Ex. 18F, p. 6. The claimant's gait was observed to be unremarkable. Ex. 18F, p. 7.

As for the objective medical evidence, there is no evidence of any formal mental health treatment during the time period in question. At his 08/23/2011 appointment with Dr. Gaston, his primary care provider, the claimant was noted to be "alert and cooperative; normal mood and affect; normal attention span and concentration." Ex. 15F, p. 4.

On 02/22/2012, Alice Garland, M.S., L.S.P.E. performed a consultative mental examination of the claimant. Ms. Garland observed that the claimant was clean and cooperative. Ex. 18F, p. 5. When asked why he could not work, the claimant responded, "Really can't find nothing- nobody is hiring." Ex. 18F, p. 6. The claimant reported that he never feels depressed or nervous. *Id.* In addition, the claimant stated that he quit his last job in 2007 because he felt that he was treated unfairly, it got too hot where he worked, and he thought the manager was too young to understand his situation. *Id.* Ms. Garland documented that the claimant performed well on some portions of the mental status examination, but he appeared to have difficulty on other portions. Ex. 18F, p. 7. Ms. Garland assessed the claimant's insight and judgment to be fair to poor. *Id.* In addition, Ms. Garland noted the claimant's activities of daily living and reports of social functioning, as discussed above. *Id.* The undersigned notes that Ms. Garland's report was also reviewed and co-signed by Dr. C. Randall May. Ex. 18F, p. 9.

TR 17-19 (*citing* TR 224-46, 253-60, 270-71, 296-308, 319-27).

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's subjective claims. TR 17-19. The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the objective and testimonial evidence, the ALJ ultimately determined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

TR 19.

The ALJ explained:

13

The claimant's statements as to the intensity, persistence, and limiting effects of his impairments and related symptoms are not fully credible due to a variety of inconsistencies. First, the claimant's statements are at odds with his significant activities of daily living and social functioning. For example, the claimant spends time on the computer/Facebook, talks with friends, visits with others, talks with friends on the phone, drives, goes to Walmart, watches TV, and even searches for jobs (which, as a separate point, suggests that the claimant believes he can work). It appears that the claimant's mother does all of the housework; however, there is no evidence that the claimant is in any way unable to perform such tasks. Second, the claimant testified to excruciating pain; however, he also testified that he takes no pain medications. Third, the claimant testified that he had no problems sitting; nonetheless, the claimant subsequently suggested that he would be unable to perform a job that permitted him to sit all day. Clearly, these statements are at odds with each other. In light of the foregoing inconsistencies, the claimant's statements concerning the intensity, persistence, and limiting effects of his impairments and related symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

. . .

In sum, the above residual functional capacity assessment is supported by the claimant's testimony, in part; the objective evidence as set forth above; inconsistencies between the claimant's statements and the evidence of record; inconsistent testimony from the claimant; the physical opinions of Dr. Gaston and supporting state agency consultants; and the mental opinion of Ms. Garland. Taken together, this evidence confirms that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; occasionally push/pull with his left lower extremity; occasionally climb ladders/ropes/scaffolds; frequently climb ramps/stairs, balance, crouch, and crawl; perform one-, two-, and three-step tasks; can work in a non-production-pace place of employment; adapt to occasional changes in the workplace or job duties; and occasionally interact with the public, supervisors, or co-workers.

TR 19-21.

Contrary to Plaintiff's assertion that the ALJ "mischaracterized" and placed "excessive emphasis" on his daily activities, as can be seen, the ALJ did no such thing. The ALJ discussed Plaintiff's daily activities as required by the Regulation, but did not base her decision on them. Her articulated rationale demonstrates that she based her decision on the inconsistencies in the record primarily between Plaintiff's subjective complaints and the medical evidence. The ALJ observed Plaintiff during his hearing, assessed the evidence of record, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. Weight Accorded to Opinion of Dr. Robert Gaston

Plaintiff maintains that the ALJ failed to "properly consider and incorporate" the opinion of Dr. Robert Gaston as set forth in his Medical Source Statement ("MSS") Physical and MSS Mental assessments. Docket No. 15 at 8, 12. With regard to the MSS Physical, Plaintiff argues that, although the ALJ stated in her decision that she gave great weight to Dr. Gaston's opinion, she did not adopt into her RFC determination all of the limitations set forth by Dr. Gaston. *Id.* at 8. Plaintiff contends that, because the ALJ gave great weight to Dr. Gatson's opinion, finding that his opinion was consistent with the physical evidence and was based on his longitudinal treatment relationship with Plaintiff, the ALJ should have included Dr. Gatson's entire opinion in the RFC because the inclusion of the omitted limitations "could change the outcome in this case." *Id.* at 8. Plaintiff contends that remand is appropriate to consider the omitted limitations and the impact they have on his ability to perform the jobs listed in the decision. *Id.* at 8-9.

With regard to Dr. Gatson's MSS Mental assessment, Plaintiff asserts that, while the ALJ accorded great weight to his opinion regarding Plaintiff's physical limitations, the ALJ accorded

only limited weight to his opinion regarding Plaintiff's mental limitations. *Id.* at 12-13. Plaintiff contends that the ALJ stated her reasoning for rejecting portions of Dr. Gatson's opinion, but failed to provide reasons for rejecting other portions of his opinions and failed to explain how she found that Dr. Gaston's MSS Physical was supported by the record, but his MSS Mental was not. *Id.* at 13. Plaintiff further maintains that Dr. Gatson's MSS Mental opinion was somewhat consistent with the opinion rendered by the post-hearing CE, which the ALJ erroneously failed to acknowledge in her decision. *Id.*

Defendant responds that Plaintiff has proffered no authority for the proposition that an ALJ must "adopt wholesale every opinion [s]he assigns great weight." Docket No. 16 at 12. Defendant notes that, in addition to according Dr. Gatson's opinion great weight, the ALJ also accorded great weight to the opinion of State Agency Medical Consultant Dr. Downey. *Id.* Defendant argues that Dr. Downey's opinion "supports the ALJ's [] departures from Dr. Gatson's assessment." *Id.* Defendant asserts that the ALJ's RFC finding "was substantially similar to Dr. Gatson's assessment," and argues that any error by the ALJ in departing from Dr. Gaston's assessment would be harmless since the jobs highlighted in the decision "do not feature significant functional demands beyond what Dr. Gaston assessed." *Id.* at 13.

With regard to Dr. Gatson's MSS Mental assessment, Defendant argues that the ALJ gave good reasons for according "little weight" to this opinion, namely that she found it unsupported by, and inconsistent with, the record. *Id.* at 14. Defendant contends that the ALJ properly discounted Dr. Gaston's mental limitations opinion since it was unsupported by the record and since Dr. Gaston was not a specialist in the area of mental health. *Id.* at 14-15.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2]  *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)).  If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

In the case at bar, the treating physician opinions at issue are those contained in the MSS

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

Physical (TR 312-18) and MSS Mental (TR 309-11) completed by Dr. Gaston on August 24, 2011. In his MSS Physical, Dr. Gaston opined that Plaintiff could frequently lift and/or carry up to twenty pounds, and occasionally lift and/or carry up to fifty pounds, but never more than that; sit for eight hours at one time without interruption, and eight hours total in an eight-hour workday; stand for up to six hours at one time without interruption, and six hours total in an eight-hour workday; and walk for up to three hours at one time without interruption, and three hours total in an eight-hour workday. TR 312-13. Dr. Gaston also opined that, with his right (dominant) hand, Plaintiff could frequently reach in all directions, handle, finger, feel, and push and pull, but he did not render any opinion regarding Plaintiff's abilities in his left hand. TR 314. Dr. Gaston further opined that Plaintiff could frequently operate foot controls with his right foot, but could only occasionally operate foot controls with his left foot. *Id.*

With regard to Plaintiff's postural limitations, Dr. Gaston opined that Plaintiff could occasionally climb stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl. TR 315. Dr. Gaston opined that none of Plaintiff's impairments affected his hearing or vision. *Id.* With regard to his environmental limitations, Dr. Gaston opined that Plaintiff could occasionally tolerate being exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme heat or cold, and vibrations, but should never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. TR 316. He further opined that Plaintiff should work in an environment with no more than moderate noise. *Id.*

Dr. Gaston additionally opined that Plaintiff could ambulate without assistance, prepare simple meals and feed himself, and care for his personal hygiene (TR 317), but Dr. Gaston also opined that Plaintiff could not travel without a companion for assistance, walk a block at a

19

reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few

steps at a reasonable pace with the use of a single hand rail, or sort, handle, and use paper or

files. *Id.*[3]

The ALJ accorded great weight to Dr. Gatson's MSS Physical, stating:

> As for the physical opinion evidence, great weight is given to the
> opinion of the claimant's treating physician, Dr. Robert Gaston.
> Dr. Gaston opined that the claimant could lift and/or carry 50
> pounds occasionally and 25 pounds frequently; stand for six hours;
> walk for three hours; sit for eight hours; frequently perform
> manipulative tasks with his right (dominant) hand; frequently
> operate foot controls with his right foot and occasionally do so
> with his left foot; occasionally climb, balance, stoop, kneel, crouch,
> and crawl; never be exposed to unprotected heights, moving
> mechanical parts, or operating a motor vehicle; occasionally be
> exposed to humidity and wetness, pulmonary irritants, extreme
> cold, extreme heat, and vibrations; or be exposed to moderate noise
> levels. Ex. 17F, pp. 1-5. Dr. Gaston's opinion is consistent with the
> physical evidence of record and is based upon his longitudinal
> treatment relationship with the claimant. In addition, Dr. Gaston is
> a specialist in family medicine. Ex. 17F, p. 6. Moreover, Dr.
> Gaston's physical opinion supports the claimant's ability to
> perform medium exertional level work, and as such, it is reflected
> in the above residual functional capacity. For the foregoing
> reasons, Dr. Gaston's physical opinion is accorded great weight.
> Similarly, the physical opinions of the state agency medical
> consultants are consistent with Dr. Gaston's opinion and, as such,
> are also given great weight. *See* Exs. 11F and 13F.

TR 19-20 (*citing* TR 272-80, 295, 312-18).

As Plaintiff acknowledges and can be seen in the quoted passages above, the ALJ adopted

and incorporated many of the limitations opined by Dr. Gaston into her RFC assessment. While

Plaintiff contends that the ALJ erred in failing to include "all of the limitations," Plaintiff does

---

[3] Dr. Gaston noted support for the findings listed above, but his notes are largely illegible.
TR 312-17.

not specify which particular limitations were not included that he contends should have been, nor does he cite to any authority for the legal proposition that the ALJ is required to incorporate every limitation on a check-the-box assessment form completed by a source that is accorded great weight. In fact, an ALJ who accords "great weight" to an opinion is not required to adopt that opinion wholesale. *See, e.g.*, *Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527, at *14 (N.D. Ohio Nov. 22, 2013). The ALJ properly accorded Dr. Gatson's MSS Physical great weight, and explained the reasons therefor. The ALJ therefore complied with the Regulations, and Plaintiff's argument on this point fails.

In Dr. Gatson's MSS Mental, Dr. Gaston opined that Plaintiff had extreme limitations in his abilities to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions; and moderate limitations in his abilities to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. TR 309. Dr. Gaston also opined that Plaintiff had marked limitations in his abilities to interact appropriately with co-workers and supervisors, respond appropriately to usual work situations, and respond to changes in a routine work setting; and moderate limitations in his ability to interact appropriately with the public. TR 310.

The ALJ accorded little weight to the opinions contained in Dr. Gatson's MSS Mental, stating:

> In contrast, limited weight is given to the mental opinion of the claimant's treating family physician, Dr. Robert Gaston. Dr. Gaston opined that the claimant was moderately limited in his ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions; extremely limited in his ability to understand, remember and carry out complex instructions and make judgments on complex work-

related decisions; moderately limited in his ability to interact appropriately with the public; and markedly limited in his ability to interact appropriately with supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. Ex. 16F, pp. 1-2. Portions of Dr. Gaston's opinion are simply unsupported by the evidence. For example, there is little or no objective evidence to substantiate Dr. Gaston's view that the claimant is markedly limited in his ability to appropriately interacts [*sic*] with supervisors and co-workers; rather, the evidence and testimony suggest that claimant generally gets along quite well with others and maintains a number of friendship [*sic*] in person, by phone, and on the computer. In addition, Dr. Gaston is a specialist in family medicine; as such, mental assessments are outside the purview of his specialty or expertise. For the foregoing reasons, Dr. Gaston's mental opinion is accorded limited weight.

TR 20 (*citing* TR 309-11).

As can be seen, the ALJ explicitly states her reasons for according limited weight to the opinions rendered by Dr. Gatson in his MSS Mental: (1) portions of his opinion are unsupported by, and actually contradict, the evidence of record; and (2) Dr. Gatson's MSS Mental opinions are outside the purview of his expertise, as he is a specialist in family medicine, not mental health. *Id.* The ALJ's reasons are proper under the Regulations; Plaintiff's argument on this point likewise fails.

### 3. Weight Accorded to Opinion of Consultative Examiner

Plaintiff maintains that the ALJ erred in failing to "properly consider and incorporate" the full opinion rendered by Ms. Alice Garland and signed by Dr. C. Randall May ("the CE") in their post-hearing consultative examination. Docket No. 15 at 9. Plaintiff argues that, while the ALJ stated that she assigned significant weight to the CE's opinion, the ALJ's RFC assessment did not account for the all of the CE's opined mental limitations. *Id.* Plaintiff contends, "since

22

the ALJ gave great weight to the consultative examiner's opinion, the entire opinion should have been included into the RFC exactly how it was given by the consultative examiner." *Id.* at 10. Plaintiff further asserts:

> In addition, after sending the claimant for the post-hearing CE and obtaining the report and opinion, the ALJ did not obtain any VE testimony regarding the impact that the limitations assigned by the consultative examiner would have on the job market and specifically the jobs identified in the decision. As such, there has been no VE testimony regarding whether the claimant could perform the jobs identified in the decision based on the limitations assigned by the post-hearing consultative examiner.

*Id.*

Defendant responds that the ALJ not only properly considered the CE's opinion, but actually accorded it significant weight, as the opinion was consistent with the objective medical evidence already in the record. Docket No. 16 at 15. Defendant contends, "As the ALJ's RFC finding already reflected the pre-hearing evidence, the ALJ concluded that this RFC finding also accounted for [the CE's] opinion." *Id.* In support of this assertion, Defendant points to specific examples in the ALJ's RFC finding which reflect the CE's opined limitations. *Id.* at 15-16. Defendant maintains that, because the ALJ's RFC finding already accounted for the CE's opined limitations, the CE's post-hearing report does not undermine the ALJ's hypothetical questions posed to the VE, as the hypothetical question posed at the hearing included the limitations in the RFC finding. *Id.* at 16. Defendant contends, therefore, that because the CE's opinion would not have changed the ALJ's hypothetical question, the VE's testimony provides substantial evidence supporting the ALJ's decision. *Id.*

In the CE's post-hearing MSS Mental at issue, the CE opined that Plaintiff had extreme

limitations in his abilities to carry out complex instructions and make judgments on complex work-related decisions; moderate to marked limitations in his abilities to understand and remember complex instructions and make judgments on simple work-related decisions; and no limitations in his abilities to understand and remember simple instructions and carry out simple instructions. TR 320. The CE also opined that Plaintiff had moderate to marked limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting; and moderate limitations in his abilities to interact appropriately with the public, supervisors, and co-workers. TR 321.

The ALJ accorded significant weight to the opinions contained in the CE's MSS Mental assessment, stating:

> As for the mental opinion evidence, significant weight is given to the opinion of Ms. Alice Garland (co-signed by Dr. C. Randall May). Ms. Garland opined that the claimant was not limited in his ability to understand, remember, and carry out simple instructions; moderately-to-markedly limited in his ability to make judgments on simple work-related decisions and to understand and remember complex instructions; extremely limited in his ability to carry out complex instructions and to make judgments on complex work-related decisions; moderately limited in his ability to interact appropriately with the public, supervisors, and co-workers, and moderately-to-markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Ex. 18F, pp. 2-3. Ms. Garland's opinion is consistent with the objective mental evidence, and as such, it is reflected in the above residual functional capacity. In addition, Ms. Garland's opinion was based upon an objective examination of the claimant.

TR 20 (*citing* TR 319-27).

While Plaintiff contends that the ALJ erred in failing to include all of the CE's opined limitations, as has been discussed above, the fact that an ALJ accords weight to an opinion does

not require the ALJ to adopt that opinion wholesale. *See, e.g.*, *Taylor*, 2013 WL 6162527, at *14. Moreover, as the ALJ stated, the limitations accepted by the ALJ were consistent with the evidence already in the record and incorporated into her RFC.[4]  Because the CE's opined limitations were consistent with the evidence of record as it stood at the time of Plaintiff's hearing, the ALJ's proffered hypothetical questions contained the relevant limitations (*see* TR 53-55), and the ALJ could properly rely upon the VE's answers when determining whether Plaintiff was disabled under the SSA. *See, e.g., Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987) (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)). Accordingly, Plaintiff's argument fails.

## 4.  Residual Functional Capacity ("RFC")

Plaintiff maintains that, while "the ALJ provided a lengthy RFC," the ALJ's decision erroneously does not include the function-by-function assessment required by SSR 96-8p. Docket No. 15 at 7. Plaintiff further argues that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record," such that this action should be remanded. *Id.*

Defendant responds that SSR 96-8p requires only that the ALJ describe the maximum amount of work that a claimant can perform based on the evidence of record.  Docket No. 16 at 7-8.  Defendant argues, "indeed, the Sixth Circuit has rejected the argument 'that SSR 96-8p requires the ALJ to include a function by function discussion of [the claimant's] maximum capacity to perform each work-related activity.'" *Id.* (*quoting Delgado v. Comm'r of Soc. Sec.*, 30

---

[4] The ALJ's RFC determination is set forth and discussed in greater detail *infra*, in the fourth statement of error.

F.App'x 542, 547-48 (6ᵗʰ Cir. 2002)). Defendant contends that the ALJ properly described the maximum amount of work that Plaintiff could perform based on the evidence of record, and therefore met SSR 96-8p's requirements. *Id.* at 7. Defendant also asserts that the ALJ properly addressed Plaintiff's ability to perform work activity on a regular and continuing basis, because the Regulations "make clear that an assessment of a claimant's RFC is inherently an assessment of what the claimant can do on a 'regular and continuing basis.'" *Id.* at 8 (*quoting* 20 C.F.R. §§ 404.1545(b), (c); 416.945(b), (c)).

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

In the case at bar, after evaluating all of the objective and testimonial evidence of record and Plaintiff's reported level of activity, the ALJ determined that Plaintiff retained an RFC for medium work with additional limitations. TR 16-17. Specifically, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

perform medium work as defined in 20 CFR 404.1567(c) and
416.967(c) *except that he can lift and/or carry up to 50 pounds
occasionally and 25 pounds frequently; occasionally push/pull
with his left lower extremity; occasionally climb ladders/ropes/
scaffolds; frequently climb ramps/stairs, balance, crouch, and
crawl; perform one-, two-, and three-step tasks; can work in a non-
production-pace place of employment; adapt to occasional
changes in the workplace or job duties; and occasionally interact
with the public, supervisors, or co-workers.*

TR 16-17 (emphasis added).

As can be seen, the ALJ specifically found, and included in her RFC determination, the

following functional limitations: (1) Plaintiff can lift and/or carry only up to 50 pounds

occasionally and 25 pounds frequently; (2) Plaintiff can only occasionally push/pull with his left

lower extremity; (3) Plaintiff can only occasionally climb ladders/ropes/scaffolds; (4) Plaintiff can

frequently climb ramps/stairs, balance, crouch, and crawl; (5) Plaintiff can perform one-, two-,

and three-step tasks; (6) Plaintiff can work only in a non-production-pace place of employment;

(7) Plaintiff can adapt only to occasional changes in the workplace or job duties; and (8) Plaintiff

can only occasionally interact with the public, supervisors, or co-workers. *Id.*

While Plaintiff contends that "the ALJ failed to include substantial limitations in the RFC

finding correlating to symptoms and limitations which were well-documented in the record,"

Plaintiff fails to identify which "substantial limitations" that "were well-documented in the

record" the ALJ omitted. As has been discussed in the statements of error above, the ALJ

properly evaluated the evidence and incorporated those restrictions she felt were consistent with,

and supported by, the evidence of record.

Additionally, although Plaintiff argues that the "RFC assessment must include a resolution

of any inconsistencies in the evidence," as has also been discussed in the statements of error above, the ALJ in the case at bar has properly acknowledged inconsistencies within the record, properly evaluated the evidence and reached a credibility determination, and reached a reasoned decision regarding the weight to be accorded to the evidence and articulated the reasons therefor. The ALJ, throughout her decision, addressed and resolved inconsistencies, and her RFC determination is inherently the result of that resolution.

Finally, while Plaintiff selectively quotes from SSR 96-8p to essentially argue that an ALJ commits reversible error if the ALJ does not explicitly conduct a function-by-function assessment and discuss each function separately, the law in the Sixth Circuit has not so held. "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Beason v. Commissioner*, 2014 WL 4063380, 13 (E.D.Tenn. 2014) (*quoting Delgado, supra*, 30 F.App'x at 547-48.). Significantly, SSR 96–8p states that the ALJ must *consider* each function separately; it does not state that the ALJ must *discuss* each function separately in the narrative of the ALJ's decision. Not only did the ALJ in the case at bar explicitly state that she had considered the entire record carefully, but as has been demonstrated in the statements of error above, the ALJ's articulated rationale throughout her decision so evidences. The ALJ's RFC determination was reached in accordance with the Regulations, and supported by the evidence of record. The ALJ's RFC determination was proper; Plaintiff's argument on this point fails.

**5. Finding of Nonseverity**

Plaintiff maintains that ALJ erred in failing to consider all of his physical and mental impairments, and in not providing sufficient reasoning as to why she found some of his impairments to be nonsevere. Docket No. 15 at 6. Specifically, Plaintiff contends that, although he was diagnosed with type II diabetes mellitus and testing revealed "findings suggestive of sensorimotor polyneuropathy in the lower extremities," the ALJ did not find these impairments to be severe and did not explain her rationale for failing to so find. *Id.* Plaintiff argues that these impairments were well-documented in the record, and that the ALJ's failure to consider these impairments was "insufficient and unjustifiable." *Id.* at 6-7.

Defendant responds that, since the ALJ found that Plaintiff had severe impairments, it is legally irrelevant whether the ALJ "could have found additional severe impairments." Docket No. 16 at 6 (*referencing Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987)). As such, Defendant contends that Plaintiff's argument lacks merit.

As an initial matter, an impairment can be considered nonsevere only if it is so slight that it could not result in a finding of disability, no matter how adverse a claimant's vocational factors might be. *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Salmi v. Secretary of H.H.S.*, 774 F.2d 685, 691-92 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir.1985). When an ALJ finds that a claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987).

In the case at bar, the ALJ found that Plaintiff's fractured left hip and borderline intellectual functioning constituted severe impairments. TR 14. Because the ALJ found that Plaintiff had at least one severe impairment and proceeded to complete the sequential evaluation process, any alleged failure of the ALJ to find other impairments severe cannot constitute grounds for reversal. *Maziarz*, 837 F.2d at 244. Accordingly, Plaintiff cannot prevail on this ground.

Moreover, the ALJ explicitly explained her rationale for finding Plaintiff's remaining impairments to be nonsevere. TR 14-15. Specifically, the ALJ stated as follows:

> The claimant also alleges disability due to diabetes and an eating disorder. In regard to diabetes, while the record does include diagnostic testing showing elevated A1C levels, the record does not include objective evidence of any associated complications or conditions (e.g., nephropathy, retinopathy, or neuropathy). *See, e.g.*, Ex. 15F, pp. 6-10. In addition, the record does not include objective evidence of any functional limitations resulting from the claimant's diabetes. In regard to the claimant's alleged eating disorder, there is minimal evidence of any such disorder, and the only documentation from the claimant's treating physician in regard to an eating disorder appears to be based upon subjective allegations and claims of having such a disorder. *See* Ex. 15F et. seq. The record does not include any objective analysis of whether the claimant exhibits the symptoms of an eating disorder; rather the documentary evidence, as well as the testimony of the claimant and the claimant's mother, indicates that the claimant is a "picky eater" although he eats regularly. In light of the foregoing, the undersigned finds that the claimant's diabetes and alleged eating disorder do not cause more than minimal limitation of the claimant's ability to perform basic work activities. As such, these impairments are considered to be non-severe.

TR 14-15 (*citing* TR 298-308).

As can be seen above, the ALJ specifically considered and discussed Plaintiff's type II diabetes mellitus and neuropathy. Even if Plaintiff was correct in his contention that the ALJ

should have found his type II diabetes mellitus and neuropathy to be severe, as discussed above, when an ALJ finds that a claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987). Because the ALJ ultimately found that Plaintiff actually had two impairments that were severe (TR 14) and she properly completed the sequential evaluation process, Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES

United States Magistrate Judge